Brianne C. McClafferty
Brent R. Bihr
HOLLAND & HART LLP
401 North 31st Street, Suite 1200
P.O. Box 639
Billings, MT 59103-0639
Telephone: (406) 252-2166
BCMcClafferty@hollandhart.com
BRBihr@hollandhart.com

Christopher J. Cariello (*admitted pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-3778
ccariello@orrick.com

Annette L. Hurst (*admitted pro hac vice*)
Catherine Y. Lui (*admitted pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-4585
ahurst@orrick.com
clui@orrick.com

Kristopher R. Wood (*admitted pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
Telephone: (949) 852-7722
kristopher.wood@orrick.com

**ATTORNEYS FOR DEFENDANT SNOWFLAKE INC.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

DARIUS H. JAMES, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

vs.

SNOWFLAKE INC., a Delaware corporation,

Defendant.

Case No. 2:25-cv-00108-BMM

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION AND SUMMARY OF ARGUMENT .......................................1

FACTUAL AND PROCEDURAL BACKGROUND .............................................4

ARGUMENT .........................................................................................................8

I. THE COURT LACKS SUBJECT MATTER JURISDICTION TO GRANT THE MOTION BECAUSE THERE IS NO EXISTING CASE OR CONTROVERSY WITH THE SOLE NAMED PLAINTIFF. ......................8

II. MR. JAMES AND HIS COUNSEL HAVE FAILED TO SHOW GOOD CAUSE UNDER RULE 16(B) TO ADD NEW PLAINTIFFS. ...................12

A. Counsel Have Not Established Their Diligence On Behalf Of The Putative Class. .........................................................................13

B. The Prejudice To Snowflake Also Requires Denial Of The Motion. .19

III. THE COURT ALSO HAS DISCRETION TO DENY THE MOTION UNDER RULE 15(A). ...........................................................................23

IV. DISMISSAL WITHOUT PREJUDICE BEST SERVES THE INTERESTS OF THE PARTIES AND THE COURT. ....................................................24

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alzheimer's Inst. of Am. v. Elan Corp. PLC*,
274 F.R.D. 272 (N.D. Cal. 2011)....23

*In re ARRIS Cable Modem Consumer Litig.*,
2019 WL 4242666 (N.D. Cal. Sept. 6, 2019)....14, 17

*In re Atlas Roofing Corp. Chalet Single Prods. Liab. Litig.*,
2017 WL 2501751 (N.D. Ga. June 9, 2017)....10

*Bailey v. Cumberland Cas. & Surety Co.*,
180 Fed. Appx. 862 (11th Cir. 2006)....10

*Barnes v. First Am. Title Ins. Co.*,
473 F.Supp.2d 798 (N.D. Ohio 2007) ....10

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025)....1

*Benanav v. Health Paws Pet Ins. LLC*,
2023 WL 5227702 (W.D. Wash. Aug. 15, 2023)....13, 16, 18, 19

*Birmingham Steel Corp. v. Tennessee Valley Authority*,
353 F.3d 1331 (11th Cir. 2003) ....9

*Bohn v. Pharmavite, LLC*,
2013 WL 12246336 (C.D. Cal. Oct. 8, 2013) ....*passim*

*Bonke v. Uber Techs., Inc.*,
2017 WL 3720732 (D. Ariz. May 25, 2017)....*passim*

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ....19

*Crown, Cork & Seal Co., Inc. v. Parker*,
462 U.S. 345 (1983)....24

*DRK Photo v. McGraw-Hill Global*,
870 F.3d 978 (9th Cir. 2017) ....................................................................20

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ..................................................................23

*Employers–Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920 (9th Cir. 2007) ....................................10

*Fathers & Daughters Nevada, LLC v. Lingfu Zhang*,
284 F.Supp.3d 1160 (D. Or. 2018) ..........................................................20

*Floyd v. Amazon.com Inc.*,
2025 WL 2768449 (W.D. Wash. Sept. 29, 2025) ......................................*passim*

*Garcia v. Schlumberger Lift Sols.*,
2021 WL 5321669 (E.D. Cal. 2021)...........................................................17

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013).....................................................................................8, 9

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021).......................................................................................1, 21

*Hitt v. Ariz. Bev. Co., LLC*,
2009 WL 4261192 (S.D. Cal. Nov. 24, 2009)............................................*passim*

*James v. Cerebras Systems Inc.*,
Case 4:25-cv-09361-JST, Doc. 1 (N.D. Cal.).............................................*passim*

*James v. Together Computer, Inc.*,
Case 3:25-cv-09578-RFL, Doc. 1 (N.D. Cal.)............................................*passim*

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ..............................................................12, 15, 16

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025).......................................................1, 21

*Kawai v. Noco Co.*,
2024 WL 6973110 (C.D. Cal. Nov. 22, 2024) .................................................10

*Kremens v. Bartley*,
431 U.S. 119 (1977) ........................................................................................ 9

*Lewis v. Continental Bank Corp.*,
494 U.S. 472 (1990) ........................................................................................ 9

*Lockheed Martin Corp. v. Network Sols., Inc.*,
194 F.3d 980 (9th Cir. 1999) ........................................................................ 23

*Long v. Ingenio, Inc.*,
2015 WL 4760377 (N.D. Cal. Aug. 12, 2015) ............................................... 24

*Los Angeles Cty. v. Davis*,
440 U.S. 625 (1979) ........................................................................................ 8

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004) ...................................................................... 20

*Oliver v. Am. Express Co.*,
2023 WL 4471937 (E.D.N.Y. July 11, 2023) ........................................... 14, 18

*Osakan v. Apple Am. Grp.*,
2010 WL 1838701 (N.D. Cal. May 5, 2010) ............................................. 16, 19

*Plascencia v. Lending 1st Mortg.*,
2012 WL 253319 (N.D. Cal. Jan. 26, 2012) .................................................. 14

*Skilstaf, Inc. v. CVS Caremark Corp.*,
2010 WL 199717 (N.D. Cal. Jan. 13, 2010) ................................................ 9, 10

*Velazquez v. GMAC Mortg. Corp.*,
2009 WL 2959838 (C.D. Cal. Sept. 10, 2009) ................................. 9, 10, 19, 24

**Statutes**

28 U.S.C. § 476(a)(3) ........................................................................................ 21

**Other Authorities**

Fed. R. Civ. P. 12 ............................................................................................... 8

Fed. R. Civ. P. 15 ................................................................................... 4, 12, 23

Fed. R. Civ. P. 16 .......................................................................................... *passim*

Fed. R. Civ. P. 23 .......................................................................................... 3

U.S. Constitution Article III .......................................................................... 2, 8, 10

# EXHIBIT INDEX

| Exhibit | Description |
|---|---|
| A | Email exchange between Snowflake's counsel and Mr. James's counsel between August 11, 2026, and August 27, 2026 |
| B | Email exchange between Snowflake's counsel and Mr. James's counsel between August 11, 2026, and October 8, 2026 |
| C | Mr. James's Responses and Objections to Snowflake's First Set of Interrogatories, dated May 28, 2026 |
| D | Copy of *The Atlantic* article titled "These 183,000 Books Are Fueling the Biggest Fight in Publishing and Tech," dated September 25, 2023 |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Court should deny Plaintiff Darius James's ("Mr. James's" or "Plaintiff's") Motion for Leave to File First Amended Complaint (the "Motion"). Doc. 32. In this putative copyright class action, a critical issue will be whether Snowflake's use of Plaintiff's works to train an open weight large language model ("LLM"), the Arctic LLM, is a fair use of copyright. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1030 (N.D. Cal. 2025). Fair use is an affirmative defense on which Snowflake bears the burden. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 16, 40 (2021). The all-important fourth factor examines whether there is evidence of significant harm *to the market for plaintiff's works*. *See id.* at 37. Other critical issues, like standing, copyright ownership, or whether Snowflake's alleged copying was *de minimis*, similarly cannot be disposed of absent evidence from each plaintiff. So when Mr. James seeks to amend the complaint to substitute entirely new plaintiffs with entirely new works less than four months before the February 2027 fact discovery cutoff, the burden on Snowflake is considerable. Snowflake would be forced to commence anew to collect the critical evidence on the central issues in the case—and on fair use, Snowflake bears the burden. The prejudice stems both from the time and money Snowflake has now wasted investigating Mr. James's case and from the need to

proceed from square one under a drastically shortened schedule. Thus, while Mr. James's health condition is regrettable, Snowflake must oppose the Motion given the clear prejudice it would cause.

This issue has been brewing far longer than the past few months since Mr. James's stroke. Mr. James was a named plaintiff in two other putative class actions for copyright infringement involving similar allegations, and he sought to add named plaintiffs in those actions all the way back in April and May of this year. He eventually dropped out of those cases. Nor has Mr. James participated meaningfully in this one—he reneged on his agreements to produce documents and has not produced a single document in this case. Mr. James's complete abandonment of this action, along with his dismissal from the other putative class actions in which he was the named plaintiff, *moots this case*—depriving the Court of subject matter jurisdiction to grant the Motion. There is no Article III case or controversy between Snowflake and a plaintiff who has no intention of proceeding in this action. Part I, *infra*.

Moreover, even if the Court had jurisdiction to grant the requested relief, it should not, because Mr. James and his counsel have not shown the diligence necessary to establish good cause for substituting entirely new plaintiffs long after the Court's March 2026 deadline. The reality is that this case, which was always going to last several years before entry of judgment, was filed and proceeded with

a sole elderly named plaintiff who apparently was already suffering from significant health issues. Rule 23 required an adequate class representative at the outset. The plaintiff is supposed to be the real party in interest, not putative class counsel. Even if Mr. James wanted to participate, nothing prevented him and counsel from including additional named plaintiffs when this action was filed in November 2025 to avoid the foreseeable problem that arose when Mr. James could no longer participate. Nothing prevented them from adding plaintiffs by the March 18, 2026 deadline to amend pleadings. And, nothing prevented them from adding plaintiffs six months ago, like they did in Mr. James's two other cases in April and May 2026. Instead, counsel waited another half year to address the issue in this case. The argument that the need to substitute plaintiffs arose only a "couple of weeks" before counsel raised it with Defendant's counsel, as a result of Mr. James's stroke about "eight weeks" before that, is myopic fiction. Plaintiff and counsel failed to exercise the diligence Rule 16(b) requires in light of the existing case deadlines. Part II(A), *infra*.

Even if the Court were inclined to look past the lack of subject matter jurisdiction and the lack of diligence, prejudice to Snowflake also requires denial of the Motion. Snowflake would have to completely restart its defense of the case with less than four months remaining before the close of fact discovery. A short continuance could not cure this prejudice, given the substantial amount of evidence

Snowflake needs from plaintiffs and related third parties to defend against plaintiffs' claims and support its fair use defense. Part II(B), *infra*. Given the unexcused delay and prejudice, the Memorandum supporting the Motion, Doc. 33 ("Memorandum"), fails even Rule 15's liberal standard. Part III, *infra*.

"Starting over within this action" by having new named plaintiffs file their "own complaint and reset all case management deadlines" to facilitate substitution is "not more efficient than filing a new complaint." *See Bonke v. Uber Techs., Inc.*, 2017 WL 3720732, at *2 (D. Ariz. May 25, 2017). It certainly does not warrant taking the risk of proceeding to judgment in a case that lacks subject matter jurisdiction, which could waste substantial resources of the parties and the Court. The Court should instead deny leave to amend and dismiss the case without prejudice, after which any other plaintiffs who wish to file a new action may do so. Part IV, *infra*.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. James filed the Class Action Complaint initiating this litigation more than eleven months ago, on November 21, 2025. Doc. 1 ("Complaint"). Mr. James alleges that Snowflake downloaded and used books contained within the publicly available "Books3 dataset" to train its large language model ("LLM"). *Id.* ¶¶ 17-19, 25. As alleged, the Books3 dataset contained books whose copyrights are owned by Mr. James and a putative class of authors. *Id.* ¶ 20. In describing the

Books3 dataset, the Complaint cited public webpages, including two from December 31, 2020, and September 20, 2023. *Id.* ¶¶ 17-19, n.1-4. On behalf of the putative class, Mr. James asserted copyright infringement claims against Snowflake for its alleged download and use of Books3 in 2023. *Id.* ¶¶ 6-7. Based on public record searches, Mr. James was born in 1954 and is in his seventies. “Darius James,” Gordon Hill Press & The Porcupine’s Quill, available at https://ghp-pql.com/products/darius-james (last accessed Oct. 27, 2026).

On March 5, 2026, the Court issued a stipulated Scheduling Order, which provided that March 18, 2026, was the “last date to amend pleadings or join parties.” Doc. 30 at 2. Before filing this action, in the fall of 2025, Mr. James filed two other putative class actions alleging copyright infringement based on the inclusion of his works in Books3: *James v. Cerebras Systems Inc.*, Case 4:25-cv-09361-JST, Doc. 1 (N.D. Cal.) (“*Cerebras AI*”); and *James v. Together Computer, Inc.*, Case 3:25-cv-09578-RFL, Doc. 1 (N.D. Cal.) (“*Together AI*”). In the *Cerebras AI* and *Together AI* actions, Mr. James has been represented by the same counsel as in this litigation—McGuire Law, P.C. (“McGuire Law Firm”). Mr. James was initially the sole named plaintiff in both cases, but in the spring of 2026, he filed amended complaints adding six new plaintiffs in total. *Together AI*, Doc. 48 (Apr. 20, 2026) (adding Josie Brown, Katia Lief, and Jacinda Townsend Gides); *Cerebras AI*, Docs. 52-1, 59 (May 11, 2026) (adding Charles Kaiser, Mary Pilon,

and Lise Haines). In October 2026, in both actions, Mr. James moved to voluntarily dismiss himself as the named plaintiff. *Together AI*, Doc. 59; *Cerebras AI*, Doc. 95. Only the *Cerebras AI* court has ruled on the motion, dismissing Mr. James's claims. Doc. 96.

In this case, Mr. James did not amend his Complaint by the March 18, 2026 amendment deadline or shortly thereafter. The Parties exchanged written discovery requests in March and April 2026, and mutually served responses on May 28, 2026. In July and August, the Parties conferred four separate times regarding Mr. James's discovery requests to Defendant and orders governing discovery. Decl. of Kristopher Wood ("Wood Decl.") ¶ 2. On August 25, 2026, the Parties held a meet and confer call in which Mr. James's counsel urged Snowflake to begin producing documents despite threshold issues such as the scope of the responses and the ESI protocol were still being negotiated, and represented Mr. James's readiness to produce documents if Defendant would agree to a mutual date for production. Wood Decl. ¶ 4, Ex. A at 2. Based on that representation by Mr. James's counsel, Snowflake accepted and agreed to mutually produce documents on September 14, 2026, and did so. *Id.* ¶¶ 4-5. But Plaintiff repudiated the agreement, made no production, and gave no advance notice or explanation for failing to comply with the parties' agreement. *Id.* ¶ 5.

On September 16, 2026, Mr. James's counsel informed Snowflake for the first time that he was seeking to file an amended complaint to substitute new named plaintiffs for Mr. James following a stroke that Mr. James suffered about "eight weeks" prior (*i.e.*, mid-July 2026). Wood Decl. ¶¶ 8, 10. Mr. James's counsel explained that after meeting in person with Mr. James "a couple of weeks ago" to collect discovery materials, they concluded he could no longer continue as class representative. *Id.* ¶ 8. Mr. James's counsel stated that he could provide relevant medical documentation, if needed, and would follow up by sending a draft amended complaint later that week. *Id.* However, Mr. James's counsel did not send a draft until September 26, 2026, and to this day has not produced any supporting documentation. Wood Decl. ¶¶ 11-12, Ex. B at 6.

The parties subsequently met and conferred. Snowflake repeatedly asked for details on the sequence of events, including when Mr. James's stroke occurred, why counsel waited to raise the issue, particularly after the parties had agreed to mutually produce documents, and why McGuire's other clients were not added to this case earlier, as they were in the *Together AI* and *Cerebras AI* actions. Ex. B at 2, 5. Plaintiff's counsel avoided answering these questions in writing despite Snowflake's repeated requests. *Id.* at 1-2, 4. Snowflake highlighted the significant prejudice it would suffer given the aggressive discovery schedule and the need for Snowflake to essentially re-start the case with new plaintiffs. *Id.* at 3. Snowflake

proposed that, instead of amending the Complaint, the parties dismiss the case without prejudice and start over with new plaintiffs. *Id.* at 1-2. Plaintiff's counsel did not answer Snowflake's questions and instead filed the instant Motion.

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION TO GRANT THE MOTION BECAUSE THERE IS NO EXISTING CASE OR CONTROVERSY WITH THE SOLE NAMED PLAINTIFF.

The Court has not certified the putative class, so substitution of plaintiffs is inappropriate. Because the only named plaintiff no longer wishes to litigate his case and there is no certified class, no adverse party has a live dispute with Snowflake sufficient to establish the Court's jurisdiction. The Court should dismiss the case under Rule 12(b)(1) for lack of an Article III "case or controversy."

Under Article III of the U.S. Constitution, a federal court can entertain only actual "cases" and "controversies," and "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71-72 (2013) (internal citations omitted). No case or controversy exists when a case becomes moot, *i.e.*, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotations and citations omitted). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the

action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990)). Given this posture, the Court should deny leave to amend and dismiss Mr. James's Complaint, and the new plaintiffs can file a new action.

The "usual rule" is that "substitution of class representatives is permitted only after a class has already been certified." *Skilstaf, Inc. v. CVS Caremark Corp.*, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010); *see also Bonke*, 2017 WL 3720732, at *2. "When deciding whether substitution of plaintiffs may be permitted after the named plaintiff's claims...become moot, the *paramount consideration is whether the putative class has been certified*." *Hitt v. Ariz. Bev. Co., LLC*, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) (emphasis added) (collecting cases). "Only a properly certified class" may have its members "succeed to the adversary position of a named representative whose claim becomes moot," *Kremens v. Bartley*, 431 U.S. 119, 132-33 (1977) (internal quotations and citations omitted), because the class has "a legal status separate from that of the named plaintiffs," *Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *3 (C.D. Cal. Sept. 10, 2009) (quoting *Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331, 1336 (11th Cir. 2003)); *Hitt*, 2009 WL 4261192, at *4 (same).

In contrast, many courts have refused named plaintiff substitution *before* class certification because courts lose jurisdiction in the absence of a "case or controversy." *See, e.g.*, *Hitt*, 2009 WL 4261192, at *5 (quoting *Employers–Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 924 (9th Cir. 2007)); *Skilstaf*, 2010 WL 199717, at *6; *Kawai v. Noco Co.*, 2024 WL 6973110, at *5 (C.D. Cal. Nov. 22, 2024); *Velazquez*, 2009 WL 2959838, at *3; *see also Bailey v. Cumberland Cas. & Surety Co.*, 180 Fed. Appx. 862, 865 (11th Cir. 2006); *Bonke*, 2017 WL 3720732, at *2; *Barnes v. First Am. Title Ins. Co.*, 473 F.Supp.2d 798, 801-02 (N.D. Ohio 2007); *In re Atlas Roofing Corp. Chalet Single Prods. Liab. Litig.*, 2017 WL 2501751, at *1 (N.D. Ga. June 9, 2017) (collecting cases and noting "[c]ourts generally deny motions to . . . substitute class representatives prior to class certification").

Similarly, because the only named plaintiff, Mr. James, no longer wishes to pursue his class action complaint, is apparently incapable of representing the class, and no class has been certified, "there is no longer an Article III 'case or controversy' between the parties, and the action must be dismissed." *See Skilstaf*, 2010 WL 199717, at *6; *accord Hitt*, 2009 WL 4261192, at *5. It makes no difference that Mr. James apparently became "an unsuitable class representative" during discovery. *See Bonke*, 2017 WL 3720732, at *2; *see also Kawai*, 2024 WL

6973110, at *5 (denying motions to substitute named plaintiff who "died prior to class certification").

The only circumstance under which a court has permitted "a named plaintiff . . . to substitute prior to class certification is when that plaintiff is both capable of and intends to become part of the class, such that her claims persist and the case or controversy remains active." *Floyd v. Amazon.com Inc.*, 2025 WL 2768449, at *8 (W.D. Wash. Sept. 29, 2025) (internal quotations and citations omitted). It is plaintiff's burden to provide evidence of plaintiff's desire through a declaration or other competent evidence. *Id.* at *7-8 (concluding that a "jurisdictional defect [arose]" when the named plaintiff "wanted to abandon the litigation" and distinguishing from other cases because no declaration was submitted). Snowflake identified this deficiency to Mr. James's counsel in its meet and confer correspondence. Ex. B at 3.

Yet the Memorandum offers no evidence suggesting that Mr. James will continue, even as an absent class member. All of the evidence is to the contrary. The fact that Mr. James declined to participate at all in discovery underscores that there is no live controversy with him—he was unwilling to do the bare minimum that would be necessary for even an absent class member to seek redemption under a class settlement or judgment. Mr. James has also withdrawn from the other two copyright class actions in which he was a named plaintiff. *Together AI*, Doc. 59;

*Cerebras AI*, Docs. 95-96. The circumstances show only that Mr. James seeks to withdraw and "never meaningfully [participated] in discovery" by producing any documents, which suggests he "[wants] to abandon the litigation entirely." *See Floyd*, 2025 WL 2768449, at *7; *see also Hitt*, 2009 WL 4261192, at *5 (denying motion to substitute named plaintiffs "[b]ecause [p]laintiff has informed her counsel that she no longer wishes to prosecute her action").

Accordingly, because there is no live case or controversy with Darius James, the Court lacks subject matter jurisdiction to grant leave to amend. If the proposed new plaintiffs wish to pursue claims against Snowflake, they can file a new action. There is no prejudice to them whatsoever from pursuing that course of action, whereas granting an amendment without jurisdiction could result in years of wasted effort by the parties and the Court.

## II. MR. JAMES AND HIS COUNSEL HAVE FAILED TO SHOW GOOD CAUSE UNDER RULE 16(B) TO ADD NEW PLAINTIFFS.

Even assuming the Court has subject matter jurisdiction, Plaintiff has not demonstrated good cause to add new parties more than seven months after the Court's deadline of March 18, 2026. *See* Doc. 30 at 2. A party seeking to amend after the scheduling order deadline to amend must satisfy Rule 16(b)'s good-cause standard in addition to Rule 15(a)'s more lenient standard. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

The Rule 16(b) good-cause standard "primarily considers the diligence of the party seeking the amendment." *Id.* A failure to be diligent ends the inquiry. *Id.* In this Circuit, no good cause exists for plaintiffs who "knew of the facts and theories at issue sufficiently in advance" of the deadline. *Benanav v. Health Paws Pet Ins. LLC*, 2023 WL 5227702, at *2 (W.D. Wash. Aug. 15, 2023) (collecting Ninth Circuit cases). It is the movant's burden to show diligence through candor "in disclosing the circumstances" concerning the amended pleadings. *Floyd*, 2025 WL 2768449, at *9. Mr. James has not shown diligence sufficient to meet Rule 16's demanding "good cause" standard.

### A. **<u>Counsel Have Not Established Their Diligence On Behalf Of The Putative Class.</u>**

Plaintiff's counsel contends that the need to amend arose only after deciding that Mr. James could not "represent his fellow class members." Mem. at 4. But diligence is measured "since the first filing of the complaint." *Bohn v. Pharmavite, LLC*, 2013 WL 12246336, at *2 (C.D. Cal. Oct. 8, 2013). Mr. James and his counsel understood that this was a putative class action from the outset of the case and chose to pursue it with a sole named plaintiff. Diligence demanded that counsel undertake "affirmative efforts to find representatives" in addition to Mr. James, who is apparently an elderly man with significant preexisting health

conditions. *See Oliver v. Am. Express Co.*, 2023 WL 4471937, at *5 (E.D.N.Y. July 11, 2023).

Mr. James's counsel could have added named plaintiffs at any time, as they "have known the basic facts and theories of their claims since the suit began, and they do not purport to now change them." *See In re ARRIS Cable Modem Consumer Litig.*, 2019 WL 4242666, at *4 (N.D. Cal. Sept. 6, 2019). Mr. James faced no "barriers to identification that were impossible to overcome or any new information or facts learned through discovery that were necessary to" add new plaintiffs. *See Oliver*, 2023 WL 4471937, at *5. Mr. James's counsel claims to have "the documents sufficient to identify" the potential new plaintiffs, including access to a tool that has existed since September 25, 2023 that allows searches for "the names of every" relevant book and author in the Books3 dataset, which. *See Plascencia v. Lending 1st Mortg.*, 2012 WL 253319, at *5, *6 (N.D. Cal. Jan. 26, 2012); Compl. ¶¶ 17-19, n.1-4; Wood Decl., Ex. C at 7 (Plaintiff's May 28, 2026 Response to Interrogatory No. 2 stating that his basis for asserting that Snowflake downloaded his work originated from a "digital article from the *Atlantic* which provides a search tool" and from publicly available websites cited in the Complaint), Ex. D at 1-2 (*The Atlantic* webpage dated September 25, 2023 and cited in Plaintiff's Response to Interrogatory No. 2 providing a "search tool to see

which [authors']" books were included in Books3 and "used to train the machines").

Indeed, in the two other cases pending in the Northern District of California where the McGuire Law Firm represents Mr. James as a named plaintiff in class-action copyright litigation, Mr. James and the McGuire Law Firm sought to amend their pleadings to add additional plaintiffs in April and May 2026—long before the problems with Mr. James's health allegedly became acute. *Together AI*, Doc. 48; *Cerebras AI*, Doc. 52-1. They have offered no explanation for their failure to do so here.

The failure to act here indicates a lack of diligence from the outset of this case, and certainly no later than April 2026, given the risks of proceeding with "blind faith" in a sole elderly named plaintiff with compromised health. *See Bohn*, 2013 WL 12246336, at *2 (finding no good cause existed even though counsel "undeniably [had] worked swiftly to find a new class representative" following denial of class certification because of the risk of proceeding with lone plaintiff's claims). "[C]arelessness is not compatible with a finding of diligence." *See Johnson*, 975 F.2d at 609. In April, the McGuire Law Firm and Mr. James understood that, at a minimum, he should not be the *sole* named plaintiff in putative class action copyright litigation. At that point in time, if they had sought amendment to add additional plaintiffs, the prejudice to Snowflake of having to

commence discovery with multiple new parties would have been minimal. Now, less than four months before the fact discovery cutoff, they propose to start over completely with multiple new plaintiffs. *See* Part II(B), *infra*.

At the very latest, the relevant event from which to assess diligence under Rule 16 is the time of onset of Mr. James's acute condition of stroke—*eight weeks* before counsel even raised a concern in this action.[1] Wood Decl. ¶¶ 8, 10. The additional two-months' delay in raising the issue after his significant health event is particularly inexcusable. A stroke is a serious matter that should have immediately called into question Mr. James's fitness to continue as the sole class representative. Given counsel's "awareness" of the "potential . . . issue" concerning Mr. James's fitness, diligence required counsel to "promptly . . . [take] appropriate steps to . . . seek to join or substitute [Mr. James] with" new representatives. *See Osakan v. Apple Am. Grp.*, 2010 WL 1838701, at *3 (N.D. Cal. May 5, 2010). If Mr. James had made a full recovery, then there would be no harm in having additional class representatives, but if not, then Mr. James's

[1] It is likewise irrelevant whether Mr. James "has acted with diligence to meet all existing deadlines set forth by the Court," *see* Mem. at 4, because "the Rule 16 inquiry is focused on [Mr. James'] diligence in seeking to amend, not [his] general diligence in the case." *See Benanav*, 2023 WL 5227702, at *5 (citing *Johnson*, 975 F.2d at 609).

replacements would have already been in the case and participating in discovery for months.

Instead, despite having added new named plaintiffs months ago in the other two actions in which it represents Mr. James, the McGuire Law Firm waited to inform Defendant's counsel. Worse, during that period of delay, Plaintiff's counsel were obtaining discovery from Snowflake and agreeing to produce on Mr. James's behalf when they apparently knew he no longer intended to participate in this action. Wood Decl. ¶¶ 4-5, Ex. A at 2. Even a two-months' delay is a lack of diligence fatal to a showing of good cause under these circumstances. *See, e.g.*, *Garcia v. Schlumberger Lift Sols.*, 2021 WL 5321669, at *3 (E.D. Cal. 2021) (collecting cases, noting that "[t]his court and others have repeatedly determined that a delay of more than two months in seeking leave to amend weighs against permitting amendment," and denying leave to amend to substitute new plaintiffs in class action when two months had passed); *ARRIS*, 2019 WL 4242666, at *4; *Floyd*, 2025 WL 2768449, at *9 (finding against plaintiff's diligence in seeking substitution of the only named plaintiff because the relevant "timespan" was "measured in weeks rather than days", which "[distinguished the] case from the diligence" found in other cases involving such substitution).

Mr. James's counsel must have known of his condition during the many meetings of counsel. *See* Wood Decl. ¶ 2. Yet the Memorandum does not explain

why they failed to raise the issue and instead represented that Mr. James would comply with his document production obligations. Nor did counsel explain or give Snowflake advance notice when Mr. James failed to comply with the parties' agreement to mutually produce on September 14. Wood Decl. ¶ 5.

And, the Memorandum lacks any evidence whatsoever, or even a specific timeline of the relevant events, such as the exact date of the stroke, "when during discovery" counsel learned of the stroke, when it "[became] clear" Mr. James could no longer continue; the "specifics with respect to [Mr. James's counsel's] attempt[s] to find" additional plaintiffs; and when potential new plaintiffs "came forward" in this case, *Cerebras AI*, and *Together AI*. *See Oliver*, 2023 WL 4471937, at *4; Mem. at 4; *accord Benanav*, 2023 WL 5227702, at *4. Nor does the Memorandum offer any "explanation . . . for why counsel waited" to add the plaintiffs in *Cerebras AI* and *Together AI* who retained the McGuire Law Firm "months prior to counsel seeking amendment." *See Oliver*, 2023 WL 4471937, at *6. This lack of detail is itself fatal, given that Mr. James bears the burden to "voluntarily share[]" relevant facts. *See Floyd*, 2025 WL 2768449, at *5; *accord Hitt*, 2009 WL 4261192, at *6. "[W]hy should that lack of candor not trouble the Court, if diligence is paramount?" *See Floyd*, 2025 WL 2768449, at *9.

The gaps in the timeline are particularly inexcusable because Snowflake twice requested the information during the meet and confer process on the Motion.

Ex. B at 2, 4. Mr. James's "lack of diligence is underscored by [his] refusal to state" that critically relevant information. *See Benanav*, 2023 WL 5227702, at *4.

**B. <u>The Prejudice To Snowflake Also Requires Denial Of The Motion.</u>**

Though it is "not required" where a plaintiff has failed in his burden to demonstrate good cause, prejudice "supplies an additional reason for denying the [Motion]." *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000). The prejudice to Snowflake from the proposed amendment at this late date is manifest.

Snowflake has been deprived of months in which to conduct discovery from the proposed new plaintiffs, while spending time on a now-useless investigation and discovery of Mr. James. Snowflake drafted and served written discovery, drafted deficiency correspondence regarding Mr. James's responses, retained technical consultants to analyze Mr. James's claims regarding Snowflake's LLM training data, assessed Mr. James's ownership of the relevant copyright interests, and analyzed Mr. James's publicly available communications. Wood Decl. ¶ 13. Plaintiff's delay moots "the Plaintiff-specific work [Snowflake has] done," *Hitt*, 2009 WL 4261192, at *5, which requires Snowflake to "re-do all of the discovery . . . as to [Mr. James]" and "start anew," *see Velazquez*, 2009 WL 2959838, at *4; *accord Osakan*, 2010 WL 1838701, at *5; *Bohn*, 2013 WL 12246336, at *4.

Further, Mr. James's delay is prejudicial because it places undue time pressures on Snowflake. Fact discovery closes on February 25, 2027, which is only *four months* away. Doc. 30 at 2. Snowflake could not begin the work necessary to evaluate the new plaintiffs' purported ownership of the works-in-suit, the portion of the works in Snowflake's training data, or plaintiff-specific information bearing on fair use until after the new plaintiffs provided copies of their works and written discovery responses. *See Newton v. Diamond*, 388 F.3d 1189, 1195-96 (9th Cir. 2004) (granting summary judgment for defendant for copyright infringement claim after comparing plaintiff's musical composition with defendant's recording to determine that copying was *de minimis*); *DRK Photo v. McGraw-Hill Global*, 870 F.3d 978, 985-88 (9th Cir. 2017) (affirming summary judgment for the defendant because agreements between photographers and the plaintiff, a stock photography agency, showed that the agency did not own the relevant copyright interests as required to establish standing); *Fathers & Daughters Nevada, LLC v. Lingfu Zhang*, 284 F.Supp.3d 1160, 1169-70 (D. Or. 2018) (granting summary judgment and dismissing author's claims for lacking standing because copyrights were assigned pursuant to agreements with sales agency and distributor). Between when that discovery is provided and the close of fact discovery, Snowflake would need to complete all written discovery and depositions not just of the new proposed plaintiffs, but also of their publishers, agents, distributors, and other third parties,

all of whom may resist discovery if the conduct of similarly situated third parties in other generative AI copyright litigation is any indication. Decl. of Annette L. Hurst ¶¶ 2-5.

A short continuance cannot easily cure this prejudice. The case would effectively start over, but without the protection of a fresh case schedule. That is particularly significant where, as here, fair use is the primary defense, and it is an affirmative defense on which Defendant bears the burden. *See Google*, 593 U.S. at 16, 40. The all-important fourth factor of fair use requires examination of the market *for plaintiffs' works*. *See id.* at 37; *Kadrey*, 788 F.Supp.3d at 1060. Snowflake literally has none of the documents necessary to conduct an analysis showing a lack of significant harm to the traditional markets for the new plaintiffs' works—no publishing agreements, licenses, royalty statements, marketing materials, sales, pricing, and revenue data—Snowflake is starting from square one in a case where all recognize that defendant will be doing far more than simply putting plaintiffs to their burden of proof.

Additionally, even if the Court reset all deadlines to the equivalent of those in the original case management order, the case would almost certainly exceed the Civil Justice Reform Act's three-year target. *See* 28 U.S.C. § 476(a)(3).

Moreover, there is simply no benefit to pursuing this approach: "[s]tarting over within this action" by having new plaintiffs file their "own complaint and

reset all case management deadlines" to facilitate substitution is "not more efficient than filing a new complaint." *See Bonke*, 2017 WL 3720732, at *2 (denying motion to substitute a new class representative and file an amended complaint).

Mr. James's contention that Snowflake "would not be prejudiced because the underlying claims will not change or enlarge in scope is unpersuasive." *See Bohn*, 2013 WL 12246336, at *4; Mem. at 6. Snowflake would need to conduct unique work pertaining to the new plaintiffs' claims, including but not limited to drafting an Answer and written discovery requests, responding to deficiencies in the new plaintiffs' written discovery responses, assessing their asserted ownership of the works-in-suit, analyzing the new plaintiffs' publicly available communications, determining the extent to which the new plaintiffs' works are in Snowflake's training data, and conducting third-party discovery of plaintiffs' business associates. And after assessing the new plaintiffs' discovery responses, Snowflake will need to seek relevant third party discovery with the publishers, agents, distributors, and other third parties. That is "precisely the sort of prejudice" that justifies denying a motion to amend. *See Bohn*, 2013 WL 12246336, at *4. Given the lack of diligence and the prejudice, even assuming subject matter jurisdiction exists, the Motion should be denied for failure to meet Rule 16(b)'s good cause requirement.

## III. <u>THE COURT ALSO HAS DISCRETION TO DENY THE MOTION UNDER RULE 15(A).</u>

The Court also has discretion to deny the motion under Rule 15. Five factors may be considered: (1) "undue delay," (2) "bad faith or dilatory motive," (3) "prejudice to the opposing party," (4) "futility of amendment," and (5) "repeated failure to cure deficiencies by amendments previously allowed." *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (internal quotations and citations omitted). Of these, prejudice "carries the greatest weight." *Id.* (internal quotations and citations omitted).

The third and most important factor, prejudice, weighs in Snowflake's favor for the reasons described above. So too does the first factor, undue delay, because Mr. James unduly delayed in adding new class representatives for all the reasons set out in Part II(A), *supra*, including because "[n]othing in the proposed amended complaint relied on facts that were unavailable before the . . . deadline." *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). The remaining factors—bad faith, futility, and repeated failure to cure deficiencies—are not pertinent to the issues here and do not outweigh the first and all-important third factors, which alone suffice to deny the Motion under Rule 15. *See, e.g.*, *Alzheimer's Inst. of Am. v. Elan Corp. PLC*, 274 F.R.D. 272, 276-78 (N.D. Cal.

2011). This is not a situation where refusal of leave to amend will deprive anyone of their substantive rights. The new plaintiffs can start fresh by filing a new action.

## IV. <u>DISMISSAL WITHOUT PREJUDICE BEST SERVES THE INTERESTS OF THE PARTIES AND THE COURT.</u>

Given that there is no longer an existing plaintiff with a live controversy, Mr. James's request for leave to amend should be denied, and the Court should dismiss Mr. James's case. "Starting over within this action" by having new named plaintiffs file their "own complaint and reset all case management deadlines" to facilitate substitution is "not more efficient than filing a new complaint." *See Bonke*, 2017 WL 3720732, at *2. "[Of] course, [p]laintiffs' counsel remains free to file a new case on behalf of the [new named plaintiffs]." *See Velazquez*, 2009 WL 2959838, at *4; *accord Bohn*, 2013 WL 12246336, at *3 (noting that following denials of motions to certify the class and to substitute named plaintiffs, the "rights of the absent class members" were "not implicated inasmuch as this is not a class action"). This will cause no substantive prejudice to any new potential plaintiffs. *See Long v. Ingenio, Inc.*, 2015 WL 4760377, at *5 (N.D. Cal. Aug. 12, 2015); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983). The Parties will get a "clean slate" in terms of discovery deadlines without the potential obstacle of having already sought a continuance. A clean slate would also avoid the significant waste

of time and resources by the parties and the Court that would occur if leave to amend were granted while the Court lacked subject matter jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Motion for Leave to File First Amended Complaint and dismiss this litigation.

Dated: October 27, 2026

*/s/ Annette L. Hurst*
Annette L. Hurst (*admitted pro hac vice*)
Catherine Y. Lui (*admitted pro hac vice*)
Christopher J. Cariello (*admitted pro hac vice*)
Kristopher R. Wood (*admitted pro hac vice*)
Orrick, Herrington & Sutcliffe LLP

Brianne C. McClafferty
Brent R. Bihr
Holland & Hart LLP

ATTORNEYS FOR DEFENDANT SNOWFLAKE INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, Kristopher R. Wood, certifies that this Brief complies with the requirements of Local Rule 7.1(d)(2). The total word count is 5,803 words, excluding caption, certificates of services and compliance, and table of contents and authorities. The undersigned relies on the word count of the word processing system used to prepare this document.

*/s/ Kristopher R. Wood*
Kristopher R. Wood (*admitted pro hac vice*)
Orrick, Herrington & Sutcliffe LLP

ATTORNEYS FOR DEFENDANT SNOWFLAKE INC.